UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ARSHENNA HINES,
    Plaintiff,

v.                                                            No. 3:14 CV 1914 (WWE)

STATE OF CONNECTICUT
DEPARTMENT OF CORRECTION,
    Defendant.

## MEMORANDUM OF DECISION ON SUMMARY JUDGMENT

In this action, plaintiff Arshenna Hines alleges that defendant State of Connecticut Department of Correction ("DOC") discriminated against her because she is an African-American woman and retaliated against her for filing complaints. She alleges disparate treatment based on race and gender in violation of Title VII and the Connecticut Fair Employment Practices Act ("CFEPA"); she alleges retaliation in violation of Title VII and CFEPA.[1]

Defendant has filed a motion for summary judgment on plaintiff's claims of disparate treatment and retaliation. For the following reasons, the motion for summary judgment will be granted.

### A. BACKGROUND

The parties have submitted statements of undisputed facts, exhibits and affidavits. These materials reflect the following factual background.

Plaintiff commenced employment as a Correction Officer with DOC on December 7, 2007. In June 2013, she was promoted to a position as Correctional

---

[1] Generally, Connecticut anti-discrimination statutes are interpreted in accordance with federal precedent. Kaytor v. Electric Boat Corp., 609 F.3d 537, 556 (2d Cir. 2010).

1

Treatment Officer ("CTO") and began a six-month promotional working test period at the Corrigan-Radgowski Correction Institution.

According to the relevant Collective Bargaining Agreement, a working test period is considered an extension of the examination process. Unsatisfactory performance during the working test period is considered a failure of the competitive exam.

Performance evaluations are given at three-month intervals during the working test period, and a Unit Administrator/Warden may direct the completion of an unscheduled evaluation when the employee's performance shows a marked improvement or deterioration.

Plaintiff was supervised by Jeffrey Zegarzewski, a former Correctional Counselor Supervisor, and Martin Pluszynski, Correction Lieutenant and Unit Manager for the Security Risk Group at Corrigan. She was initially assigned to train with CTO Albert Harraka, whom she alleges treated her adversely, and Counselor Christie Huffer. Approximately one month later, due to concerns about her performance, she was assigned to first shift for an additional thirty days of supervision and training with Harraka and Huffer.

On September 4, 2013, Zegarzewski and Pluszynski completed an initial performance evaluation of plaintiff. She was rated as overall unsatisfactory, and she received a Notice of Tardiness. The evaluation was approved by the Deputy Warden and presented to the plaintiff on September 16, 2013.

Plaintiff's assignment to first shift was extended another thirty days for further on the job training. Plaintiff was provided with a letter that extended her working test period by an additional three months to give her an opportunity to improve her

performance. However, plaintiff refused to sign the letter, and her working test period was not extended.

Plaintiff filed a grievance regarding her evaluation. However, the grievance was withdrawn by her union because performance evaluations cannot be grieved during a working test period pursuant to the Collective Bargaining Agreement.

On September 6, 2013, plaintiff and Harraka had a verbal conflict regarding work duties. Harraka was thereafter temporarily transferred to another building pending investigation. Harraka and plaintiff did not work together again after that incident.

In a statement dated September 6, 2013, plaintiff indicated that Harraka had been unprofessional and uncooperative. DOC staff attempted mediation with Harraka and plaintiff but plaintiff refused to participate. She told Deputy Warden Stephen Bates that she wanted the matter investigated and that she had been subjected to further retaliation and harassment at Corrigan. Bates instructed her to file an incident report.

Plaintiff submitted her incident report, which included information about work interactions from the commencement of her employment. The report was reviewed by DOC's Affirmative Action Unit and Labor Relations Unit. The Affirmative Action Unit determined that the incidents did not fall within the jurisdiction of DOC Administrative Directives on Equal Employment Opportunity and Affirmative Action or Sexual Harassment. The Labor Relation Unit determined that the incidents did not rise to the level of the Administrative Directive on Workplace Violence.

On October 11, 2013, plaintiff received a performance evaluation that rated her as overall unsatisfactory. It noted that she required remedial training on her duties and

had made frequent errors, including with respect to entering information in the Security Risk Group database. Plaintiff was notified that she would remain on first shift until further notice for continued training and observation.

On October 17, 2013, she reported to DOC that her car had been vandalized. DOC's investigation, which included a review of the video surveillance footage, concluded that plaintiff's claim was not substantiated.

On November 19, 2013, plaintiff received a performance evaluation, rating her as overall unsatisfactory. That day, she signed an action plan, setting forth areas of improvement to ameliorate her performance rating.

On November 22, 2013, plaintiff filed a complaint with DOC's Affirmative Action Unit, alleging that she had been harassed by Harraka and that her car had been vandalized on DOC property. The Affirmative Action Unit concluded that the allegations did not fall within the jurisdiction of DOC Administrative Directive on Sexual Harassment or Discrimination. The Unit also found that plaintiff's allegations of vandalism could not be substantiated.

On December 9, 2013, plaintiff received an unsatisfactory evaluation. The evaluation included a Notice regarding her failure to follow procedure regarding late call out per DOC Administrative Directive 2.11.

After plaintiff's six-month working test period concluded, plaintiff was offered the opportunity to self-demote to her previous position of Correction Officer. Plaintiff declined. Warden Scott Erfe made the decision to demote plaintiff to Correction Officer effective January 10, 2014.

On January 31, 2014, plaintiff filed a complaint with the Connecticut Commission

on Human Rights and Opportunities ("CHRO").

From January 10 through August 31, 2014, plaintiff took an approved leave of absence. She submitted a medical certificate dated July 3, 2014, indicating a probable duration of her condition until August 31, 2014. On September 1, 2014, plaintiff did not return to work. By letter, DOC notified plaintiff that she was considered to be on unauthorized leave and that she was required to submit proper medical documentation within five days of the letter. On September 4, 2014, DOC received a faxed medical certificate that appeared to be a copy of the previous medical certificate submitted by plaintiff in July. The dates had been whited out and written over. Plaintiff maintains that her doctor wrote over the dates.

DOC sent plaintiff a form dated October 17, 2014, which indicated that a new medical certificate was required because the medical certificate that she had submitted had "missing and inconsistent data." DOC sent plaintiff a second letter dated October 20, 2014, informing her that she had until October 28, 2014 to provide proper medical documentation or an investigation would be conducted regarding violations of DOC Administrative Directive and State Personnel Regulation 5-20 regarding unauthorized leave.

In a third letter dated November 3, 2014, DOC notified plaintiff that proper medical documentation had not been received, and that an investigation would be conducted regarding her unauthorized leave.

DOC processed plaintiff's resignation not in good standing effective November 17, 2014, due to her unauthorized leave of absence for five or more working days pursuant to State Personnel Regulation 5-243-1(1). By letter dated November 17,

5

2014, plaintiff was informed that she could appeal the resignation not in good standing to the Commissioner of Administrative Services. She did not file an appeal.

## B. DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc., 664 F.2d at 351. In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson, 477 U.S. at 255.

If a nonmoving party has failed to make a sufficient showing on an essential element of his or her case with respect to which he or she has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the

motion for summary judgment is not met.  Anderson, 477 U.S. at 249.

Disparate Treatment

Plaintiff alleges that her performance evaluations, demotion and resignation not in good standing were motivated by a discriminatory animus based on her race, color and gender.

The Court analyzes plaintiff's claims of disparate treatment and retaliation according to the burden shifting process established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-56 (1981).

To establish her prima facie claim of discriminatory treatment, plaintiff must demonstrate that (1) she belongs to a protected class; (2) she was performing her duties satisfactorily; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.  Although the plaintiff's initial burden is not onerous, she must show that the alleged adverse employment action was not made for legitimate reasons.  Thomas v. St. Francis Hosp. & Med. Ctr., 990 F. Supp. 81, 86 (D. Conn. 1998).

If the plaintiff establishes a prima facie case, the defendant must articulate a legitimate, non-discriminatory business reason for the alleged discriminatory action. The plaintiff must then prove by a preponderance of the evidence that the supposed legitimate reason is actually a pretext for discrimination.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993).  Plaintiff may raise an inference of discrimination by showing that her employer treated her less favorably than similarly situated employees outside her protected class for a similar offense.  Graham v. Long Island R.R., 230

7

F.3d 34, 39 (2d Cir. 2000). However, in this context, plaintiff must demonstrate that these comparators are similarly situated in all material respects and have "engaged in comparable conduct." Shumway v. United Parcel Service, Inc., 118 F.3d 60, 64 (2d Cir. 1997).

For purposes of ruling on this motion, the Court assumes that plaintiff has established her prima facie case of discrimination. As a legitimate, non-discriminatory reason for the poor employment evaluations and demotion, defendant maintains that plaintiff's performance was unsatisfactory due to errors, tardiness and failure to follow procedures, and that plaintiff's performance did not improve despite additional training and extensions of work test period. Plaintiff has failed to refute with competent evidence that this proffered reason the adverse employment action is pretext for discriminatory animus. Although plaintiff asserts that she received favorable evaluations as a Correction Officer, she has not shown that she performed satisfactorily as a CTO. Further, plaintiff has not identified any comparators who were treated more favorably under similar circumstances. The Court will grant summary judgment on these claims.

Defendant argues further that plaintiff has failed to exhaust her administrative remedies relevant to the resignation not in good standing claim. Even assuming that plaintiff's claim was exhausted and that it satisfies the prima facie case, summary judgment on this claim is still appropriate. Defendant asserts that it processed plaintiff's resignation not in good standing due to her unauthorized leave. No evidence establishes that defendant's proffered reason constitutes a pretext for discrimination. In fact, the evidentiary record indicates that plaintiff did not comply with defendant's

8

repeated request that she submit acceptable medical documentation to substantiate her absence. Accordingly, the Court will grant the motion for summary judgment on this claim.

Retaliation

In order to establish a prima facie case of retaliation, plaintiff must show that "(1) she was engaged in protected activity, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." Lore v. City of Syracuse, 670 F.3d 127, 157 (2d Cir. 2012). In the context of retaliation, the applicable standard for adverse employment action is broader than that applied to discrimination claims. Santiesteban v. Nestle Waters North America, Inc., 61 F. Supp. 3d 221, 241 (E.D.N.Y. 2014). To prevail on a retaliation claim, plaintiff need not prove the merit of her underlying complaint of discrimination, but only that she had a "good faith, reasonable belief that the underlying employment practice was unlawful." Kwan v. Andalex Grp. LLC, 737 F.3d 834, 843 (2d Cir. 2013). A "plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fe Railway Co., 548 U.S. 53, 68 (2006). Adverse employment action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities...;" it may include "a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." Chung v. City Univ. of N.Y., 605 Fed. Appx. 20, 22 (2d Cir. 2015). However, actions that are

9

"trivial harms" such as "petty slights or minor annoyances that often take place at work and that all employees experience" are not materially adverse.  Burlington, 548 U.S. at 68.

If plaintiff establishes a prima facie case, defendant must articulate a legitimate, non-retaliatory reason for the challenged employment decision; plaintiff must then "point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation."  Treglia v. Town of Manlius, 313 F.3d 713, 721 (2d Cir. 2002).

Defendant argues that plaintiff did not engage in protected activity and that she did not exhaust her claim related to the resignation in good standing.  Even assuming proper exhaustion and satisfaction of the prima facie case, plaintiff has failed to adduce evidence supporting an inference that defendant's proffered reasons for its actions are pretext for retaliation.  Summary judgment will enter on this claim.

### C. CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment [doc. #38] is GRANTED.  The Court notes that plaintiff's complaint also references discrimination theories of disparate impact and hostile environment.  Plaintiff should clarify whether such claims have been abandoned after the close of discovery, which the Court will not reopen.  Within five days of this Ruling, the plaintiff should indicate whether she has any remaining claims based on the allegations of her complaint.

Dated this __16th___ day of May, 2017 at Bridgeport, Connecticut.

     /s/Warren W. Eginton
     WARREN W. EGINTON
     SENIOR UNITED STATES DISTRICT JUDGE